IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYRAL BELGIUM N.V., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 15-1172-LPS |
| | : | |
| U.S. INGREDIENTS INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

At **Wilmington** this **9th** day of **September, 2016**, having reviewed the parties' briefing (D.I. 14, 15, 16) and related filings regarding Plaintiff and Counterclaim-Defendant Syral Belgium N.V.'s ("Syral") Motion to Dismiss Defendant and Counterclaim-Plaintiff U.S. Ingredients Inc.'s ("USI") Amended Counterclaim (D.I. 13) ("Motion to Dismiss"), and having heard oral argument, **IT IS HEREBY ORDERED** that, for the reasons below,

(1) Syral's original Motion to Dismiss (D.I. 11) is **DENIED AS MOOT** in light of the filing of the Amended Counterclaim (D.I. 12);

(2) Syral's Motion to Dismiss (D.I. 13) is **GRANTED**;

(3) USI's Amended Counterclaim (D.I. 12 at 8-15) is **DISMISSED WITHOUT PREJUDICE**; and

(4) USI may file an amended version of its Amended Counterclaim ("Second Amended Counterclaim") only if:

(a) the Second Amended Counterclaim corrects the deficiencies in USI's Amended Counterclaim that are discussed in this Order;

1

(b) USI provides a copy of the Second Amended Counterclaim to Syral no later than **September 30, 2016**;

(c) the parties meet and confer no later than **October 17, 2016** to discuss any alleged deficiencies identified by Syral in the Second Amended Counterclaim; and

(d) USI files with the Court a revised version of the Second Amended Counterclaim, addressing any validly alleged deficiencies, no later than **October 31, 2016**.

**IT IS FURTHER ORDERED** that briefing associated with any future motion to dismiss USI's Second Amended Counterclaim shall follow the letter briefing process outlined on the Court's website for motions to amend or strike.[1] That is, such a motion shall *not* be accompanied by an opening brief, but instead by a letter, not to exceed three pages; to which the non-movant may respond with a letter not to exceed five pages; and to which the movant may reply with a letter not to exceed two pages. In the event of such a motion, the parties shall meet and confer and file (1) a stipulation and proposed order setting deadlines for submission of the aforementioned letters and (2) a letter requesting a teleconference to address the motion.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and shall, no later than **September 23, 2016**, submit a proposed scheduling order consistent with the form scheduling order that can be found on the Court's website.

## I. BACKGROUND

Syral, a Belgium-based entity, sued USI, a Delaware corporation with its principal place of business in Pennsylvania, for breach of contract on December 18, 2015. (D.I. 1 at 1; D.I. 12 at

---

[1] *See* http://www.ded.uscourts.gov/judge/chief-judge-leonard-p-stark ("New Procedures").

8) The contract at issue involves the sale and shipment of wheat gluten by Syral to USI.[2] (*See* D.I. 14 at 1; D.I. 15 at 1) USI answered Syral's complaint on February 1, 2016 and counterclaimed. (D.I. 7) Syral moved to dismiss USI's counterclaim on February 22, 2016. (D.I. 11)

In lieu of responding to Syral's motion to dismiss, USI filed its Amended Counterclaim on March 7, 2016. (D.I. 12 at 8-15) USI's Amended Counterclaim alleges that Syral sent shipments of wheat gluten that were too large for USI to handle, violating "applicable industry standards and customs" associated with "supply contracts" such as the contract at issue in this case. (*Id.* at 11) To address the oversupply issues, USI avers that the parties agreed to modify their original contract ("Modified Contract") to require Syral to compensate USI for expenses related to the oversupply shipments. (*Id.* at 11-12)

USI alleges that Syral breached the parties' Modified Contract in two ways. First, USI alleges that Syral breached the Modified Contract by refusing to compensate USI for expenses related to the oversupply shipments. (D.I. 12 at 12) ("Reimbursement Breach") Second, USI alleges that Syral breached the Modified Contract by failing to supply USI with the total amount of wheat gluten Syral agreed to deliver. (*Id.* at 13) ("Termination Breach")

Syral moved to dismiss USI's Amended Counterclaim for failure to state a claim on March 24, 2016. (D.I. 13) The parties completed briefing on the Motion to Dismiss on April 18,

---

[2]The parties agree that there is no **written** contract between Syral and USI. (*See* Transcript of July 12, 2016 Hearing (D.I. 22) ("Tr.") at 4 (Counsel for Syral: "There are purchase orders and confirmations and invoices that evidence a contract, but to my knowledge, there is no written contract that sets forth the various obligations and rights of each of the parties in totality."); *id.* at 18 (The Court: "[Y]ou are not arguing that there is a full written contract between your client and Syral; correct?" Counsel for USI: "No, we are not."))

2016. (D.I. 14, 15, 16) The Court heard oral argument on July 12, 2016. (*See* Tr.)

## II. **LEGAL STANDARDS**

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of a complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion*

*Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

### III. DISCUSSION

#### A. Choice of Law

The parties agree that terms of the original contract are governed by the United Nations Convention on Contracts for the International Sale of Goods, Apr. 11, 1980, Senate Treaty Document No. 98-9 (1983), 19 I.L.M. 671 (1980), *reprinted at* 15 U.S.C. App. (1998) ("CISG"). (D.I. 14 at 9 n.1; D.I. 15 at 1) The CISG applies to "'contracts of sale of goods between parties whose places of business are in different States . . . when the States are Contracting States.'" *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 397 (3d Cir. 2010) (quoting CISG Art. 1(1)(a)). The parties agree that the United States and Belgium are signatories to the CISG. (D.I. 14 at 9 n.1; D.I. 15 at 6 n.1) The CISG permits and covers oral contracts, such as the original contract and Modified Contract at issue in this case. (*See generally* CISG Arts. 14-24)

Although the parties agree that the CISG governed the parties' original contract for the sale of wheat gluten, Syral argues that the ***Modified*** Contract "does not relate to a sale of goods, but to Syral's alleged agreement to pay for storage costs" and, therefore, that it should be governed by Delaware law. (D.I. 14 at 15; *see also* Tr. at 6) USI responds that the Modified Contract should be governed by the CISG, because the Modified Contract, as a whole, still relates to the sale of goods. (D.I. 15 at 8 n.2)

The Court agrees with USI that the Modified Contract is governed by the CISG because

the Modified Contract as a whole relates to the sale of goods, even if individual terms added by modification do not relate to the actual *sale* of goods. Article 29 of the CISG contemplates modification of a contract for the sale of goods "by the mere agreement of the parties," and other parts of the CISG make it clear that not every term of a contract must relate to literal *sales* of goods. *See, e.g.*, CISG Art. 3(1) ("Contracts for the supply of goods ***to be manufactured or produced*** are to be considered sales unless the party who orders the goods undertakes to supply a substantial part of the materials necessary for such manufacture or production.") (emphasis added); *id.* Art. 19(3) ("Additional or different terms relating, among other things, to the price, payment, quality and quantity of the goods, ***place and time of delivery***, extent of one party's liability to the other or the settlement of disputes are considered to alter the terms of the offer materially.") (emphasis added).

The Modified Contract, as described in USI's Amended Counterclaim, added an agreement between the parties related to the timing and amount of wheat gluten to be delivered and Syral's purported obligation to reimburse USI for expenses related to the amount of wheat gluten delivered. This agreement, in combination with the terms of the original contract, is governed by the CISG because the "preponderant part" of the parties' obligations relate the sale of goods. *Cf.* CISG Art. 3(2) ("This Convention does ***not*** apply to contracts in which the ***preponderant part*** of the obligations of the party who furnishes the goods consists in the ***supply of labour or other services***.") (emphasis added).

**B. Syral's Motion to Dismiss**

USI characterizes its Amended Counterclaim as pleading "two independent contractual breaches by Syral": (1) failure to "pay costs associated with Syral's oversized deliveries of wheat

gluten" (the Reimbursement Breach) and (2) failure to "furnish the total amount of wheat gluten that Syral promised to deliver" (the Termination Breach). (D.I. 15 at 1) In seeking dismissal, Syral argues that (1) the Reimbursement Breach fails because USI failed to allege any contract between the parties that included a definite price term associated with Syral's purported obligation to reimburse USI for the costs of storing the oversupply shipments, and (2) the Termination Breach was not a breach, but rather a justified *suspension* of performance in response to USI's failure to pay for Syral's delivered shipments. (D.I. 16 at 2-3, 7) Syral also argues that USI's failure to pay was a "fundamental" breach of the Modified Contract and, therefore, that the Modified Contract was terminated under Article 64 of the CISG. (*Id.* at 4-5)

### 1. Reimbursement Breach

The Amended Counterclaim alleges that Syral offered to "compensate USI for the expenses USI incurred because of the 'oversupply' wheat gluten shipments" and that USI accepted this offer, forming the Modified Contract. (D.I. 12 at 11-12) USI alleges that Syral undertook this reimbursement obligation in exchange for USI's forbearance from bringing suit against Syral for Syral's alleged breach of "industry standards and customs" which were "a part of the contract" and which forbade Syral from shipping excessive amounts of wheat gluten per shipment. (D.I. 15 at 5-6, 8 n.2)

USI's allegations related to the Reimbursement Breach are insufficient as a matter of law. The pleading standard under Federal Rule of Civil Procedure 8 requires USI to allege which "industry standards and customs" were part of the pertinent contract(s) and how they were breached. *See Iqbal*, 556 U.S. at 678. In addition, USI needs to provide Syral adequate notice of how much wheat gluten, per shipment, is alleged to have been so excessive as to qualify as an

7

"oversupply" shipment. The Amended Counterclaim provides Syral with no way of even calculating how much it allegedly owes USI in reimbursement costs.

The CISG states that "[a] proposal for concluding a contract addressed to one or more specific persons constitutes an offer if it is *sufficiently definite* and indicates the intention of the offeror to be bound in cases of acceptance." CISG Art. 14(1) (emphasis added). As pleaded in USI's Amended Counterclaim, the purported offer by Syral to reimburse USI for oversupply expenses was *not* sufficiently definite to form the Modified Contract under the CISG.

For the foregoing reasons, USI's Amended Counterclaim fails to state a claim for relief under USI's Reimbursement Breach theory.

### 2. Termination Breach

The Amended Counterclaim alleges that Syral breached the Modified Contract by failing to supply the full amount of wheat gluten Syral had promised to deliver. (D.I. 12 at 13) However, there is nothing in the Amended Counterclaim that indicates USI made *any* payments under the Modified Contract to Syral. (*See generally id.*) At the hearing, USI indicated that it had at least some general idea of how many invoices it was aware of or in possession of which could have been used to estimate how much USI had paid Syral. (*See* Tr. at 27-28) In order to state a plausible claim for relief under *Iqbal* and *Twombly*, USI needs to plead an amount paid by USI to Syral and an amount of wheat gluten delivered by Syral to USI – or at least reasonably specific ranges of possibilities for these two unknowns – given USI's knowledge of the invoices it paid.

Article 71 of the CISG permits a contracting party to suspend performance when the other contracting party indicates that it will not perform a "substantial part" of a contract. CISG Art.

71(1) ("A party may suspend the performance of his obligations if, after the conclusion of the contract, it becomes apparent that the other party will not perform a substantial part of his obligations as a result of: (a) a serious deficiency in his ability to perform or in his creditworthiness; or (b) his conduct in preparing to perform or in performing the contract."). Moreover, Article 64 permits termination of a contract for failure to perform. In order to state a plausible claim for relief under *Iqbal* and *Twombly*, USI needs to include some notice as to how Syral's termination of deliveries was allegedly unjustified under Articles 64 and 71 of the CISG – i.e., more detailed allegations (supported by attaching, for example, invoices) showing that USI was substantially performing its obligations under the Modified Contract at the time of Syral's alleged Termination Breach.

For the foregoing reasons, USI's Amended Counterclaim fails to state a claim for relief under USI's Termination Breach theory.

## IV. CONCLUSION

For the foregoing reasons, Syral's Motion to Dismiss is granted and USI's Amended Counterclaim is dismissed without prejudice.

_____
HON. LEONARD P. STARK
UNITED STATES DISTRICT JUDGE